Constance **WEGWART**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**EAGLE MOVERS, INC.,** Individually and all others similarly situated, and **Michael S. Wolke,** Sheriff of Milwaukee County, and all others similarly situated, Defendants.

No. 73-C-556.

United States District Court, E. D. Wisconsin.

Dec. 16, 1977.

Louis J. Mestre, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

M. J. Duginski, Milwaukee, Wis., for defendant, Eagle Movers, Inc.

Robert P. Russell, Corp. Counsel, Milwaukee Co., and Gerard S. Paradowski, Asst. Corp. Counsel, Milwaukee, Wis., for defendant, Michael S. Wolke.

Before FAIRCHILD, Circuit Judge, REYNOLDS, Chief District Judge, and GORDON, District Judge.

REYNOLDS, Chief District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 in which the named plaintiff seeks a judgment declaring § 407.210, Wis. Stats. (1971), permitting the enforcement of a warehouseman's lien, unconstitutional as it applies to her, and an injunction against the defendants prohibiting them from entering into contracts under § 299.45, Wis. Stats. (1971), for the removal of the personalty of evicted tenants pursuant to writs of restitution. The named plaintiff moved the court to maintain the action as a class action and for summary judgment. The defendant Eagle Movers, Inc., moved to dismiss the action, while the defendant Michael S. Wolke filed a "Notice of Motion for Judgment Dismissing the Complaint" and attached a "Motion for Summary Judgment." For purposes of this decision, the defendant Wolke's motion will be treated as one for summary judgment. The motions then before the court are the motion of the named plaintiff to maintain this action as a class action, the motion to dismiss of the defendant Eagle Movers, Inc., and the cross-motions for summary judgment. For the reasons hereinafter stated, the named plaintiff's motion to maintain this action as a class action is granted; plaintiffs' motion for summary judgment is denied; the motion to dismiss of defendant Eagle Movers, Inc., is denied; and the motion of the defendant Eagle Movers, Inc., for summary judgment is granted.

The Court will deal first with the class action motion and motion to dismiss, and second, with the cross-motions for summary judgment.

The uncontested facts as they appear from the admissions of both defendants, the answers of the defendant Wolke to the named plaintiff's interrogatories, the statement of uncontested facts, and the briefs are as follows. On September 1, 1972, the named plaintiff entered into a verbal month-to-month lease with Richard Larson. On August 31, 1973, the County Court of Milwaukee County granted Larson a judgment of eviction against the named plaintiff and ordered the issuance of a writ of restitution. On September 7, 1973, after receiving the writ of restitution from Larson, the defendant Wolke in his capacity as sheriff of Milwaukee County executed the writ. In conjunction with the execution of the writ, Wolke contracted, pursuant to § 299.45(3)(a), Wis.Stats. (1971), with the defendant Eagle Movers for the removal of the personal property of the named plaintiff from the residence owned by Larson to Eagle Movers' warehouse. Eagle Movers informed the named plaintiff that her goods would be returned only upon payment of more than $100 for moving and storage costs. In so removing the personalty of the named plaintiff, Eagle Movers acquired a warehouseman's lien pursuant to §§ 299.45(3)(b) and 407.209, Wis.Stats. (1971), with accompanying right of enforcement pursuant to § 407.210.

After the complaint was filed, the defendant Wolke moved the court to dismiss the complaint as to him for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The defendant Eagle Movers similarly moved the court to dismiss the complaint for failure to state a claim and also on the ground that the named plaintiff was not the real party in interest. Both these motions were denied in a decision and order dated December 19, 1974. In that same decision and order, the Court made an explicit finding of subject matter jurisdiction. Subsequently, Eagle Movers filed a second motion to dismiss, this one on the grounds that (1) the named plaintiff failed to join indispensable parties; (2) that the court lacked personal and subject matter jurisdiction; (3) that process was insufficient; and (4) that service of process was insufficient.

■ With respect to Eagle Movers' challenges to personal and subject matter jurisdiction, insufficiency of process and insufficiency of service of process, the Court finds that they have been waived. Rule 12(g) of the Federal Rules of Civil Procedure provides:

"(g) Consolidation of Defenses in Motion. A party who makes a motion under this rule may join with it any other mo-

tions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."

Rule 12(h)(1) provides:

"(h) Waiver or Preservation of Certain Defenses.

"(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

Eagle Movers based its first motion to dismiss, in part, on the ground that the complaint failed to state a claim upon which relief can be granted. It had available to it at that time the other grounds raised in its second motion to dismiss. In addition, the Court made an explicit finding of subject matter jurisdiction in its decision and order dated December 19, 1976.

■ Eagle Movers also challenges the plaintiffs' complaint for failure to join as indispensable parties the landlords from whose premises the tenants are evicted. Rules 12(g) and 12(h)(2) permit such a defense to be raised by a pleading permitted under Rule 7(a). The pleadings permitted under Rule 7(a) do not include motions to dismiss. Therefore, although Eagle Movers has not waived the defense of failure to join indispensable parties, it has not properly brought it before the Court.

■ The named plaintiff challenges the manner in which Eagle Movers, acting at the behest of the sheriff, acquired a lien on her personal property. This challenge does not involve the landlords' right to eviction or to a writ of restitution. Complete and final relief can be rendered and a decree can be fashioned in this action without affecting the landlords' interest. *Shields v. Barrow*, 17 How. 130, 15 L.Ed. 158 (1854).

■ The named plaintiff moved the court pursuant to Rules 23(a) and 23(b)(2), Federal Rules of Civil Procedure, to maintain this suit as a class action on behalf of a class of all residential tenants or lessees who are subject to or may become subject to the imposition and enforcement of a lien against their personal property authorized by §§ 299.45(3), 407.209, and 407.210, Wis. Stats. (1971), pursuant to the execution of a writ of restitution by the sheriff of Milwaukee County.

The named plaintiff has established that the proposed class meets the requirements set forth in Rule 23. The number of residential lessees in Milwaukee County is sufficiently numerous as to make joinder impractical. The only issue before the Court, the constitutionality of the warehouseman's lien acquired under §§ 299.45 and 407.209 and enforced through § 407.210, is a question of law common to all the class members. The claim of the named plaintiff that the acquisition and enforcement of the lien is unconstitutional is typical of the claim of the class members. The interests of the named plaintiff are coextensive with those of the class members, and the attorney retained by the named plaintiff has demonstrated the adequacy of his representation through the pleadings and briefs he has on file with the court. Finally, it is manifest from the statement of uncontested facts that the defendants have acted and will continue to act in a manner generally applicable to the class.

The defendant Eagle Movers contends that it is not representative of the class of defendants comprised of those moving and storage businesses who contract with the county sheriffs in Wisconsin for the removal and storage of personal property of tenants pursuant to § 299.45 and authorized to act pursuant to § 407.210.

Paragraph 6 of the statement of uncontested facts demonstrates that of the 785 instances in which the sheriff of Milwaukee

County executed a writ of restitution against a residential tenant by enlisting the aid of moving and storage businesses, the defendant Eagle Movers participated in 359. No other moving and storage company participated in as many removals, and only three participated in more than three. These figures make it evident that Eagle Movers has a substantial interest in the outcome of this action, such as to insure that it will adequately represent the interests of all the class members.

■ Finally, there is a question of mootness that must be addressed by the Court. Eagle Movers alleges that it has returned all of the personal property of the named plaintiff. The named plaintiff disputes this. This factual dispute has no bearing on this action since it has been certified as a class action.

In *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court held that a class action was not moot if (1) the controversy was not moot at the time of certification; (2) a continuing case or controversy existed with respect to the remaining members of the class; and (3) the issue involved was capable of repetition yet evading review. The record shows that the second and third elements of the test have been satisfied.

The members of the class include those residential tenants who may become subject to the enforcement of the challenged lien. The statutes authorizing the creation of the lien are still in effect and continue to threaten residential tenants with imposition of the lien. Thus, although the named plaintiff may no longer have personal property subject to the lien, the remaining class members insure the existence of a continuing case or controversy.

If the defendant Eagle Movers were able to moot a challenge to its lien by returning the personal property to the named plaintiff, it could effectively prevent a judicial determination of the constitutionality of § 407.210 as it applies to the members of the plaintiff's class. All the defendant Eagle Movers need do is return the personal property to whomever commenced the action and file a suggestion of mootness. In light of the fact that such an option would be readily available to the defendant class and that the acquisition of the challenged lien is a possibility as long as the authorizing statutes remain in effect, it is apparent that the named plaintiff's claim is capable of repetition, yet evading review.

As to the need for the named plaintiff to obtain class certification before the controversy becomes moot, there is a factual dispute as to whether the named plaintiff has satisfied the requirement. However, even assuming that the factual dispute were resolved against the named plaintiff, this Court could not dismiss the action as moot. The named plaintiff has done everything within her power to obtain class certification and has failed to obtain that certification until now through no fault of her own. This Court could not in good conscience penalize the named plaintiff for the delay caused by circumstances beyond her control.

Having decided the preliminary issues raised by the parties in favor of the plaintiffs, the Court will now address the merits as raised by the parties' cross-motions for summary judgment.

In order to understand the challenge to § 407.210, Wis.Stats. (1971), it must be viewed in conjunction with §§ 299.44 and 299.45, Wis.Stats. When the county court grants a judgment of eviction in favor of a landlord, it orders restitution of the premises [1] and, at the same time, the issuance of a writ of restitution. The county sheriff executes the writ of restitution in part by removing all personal property not belong-

---

1. Section 299.44(1), Wis.Stats. (1971):

"Order for judgment; writ of restitution. (1) ORDER FOR JUDGMENT. In an eviction action, if the court finds that the plaintiff is entitled to possession, the order for judgment shall be for the restitution of the premises to the plaintiff and, if an additional cause of action is joined under s. 299.40(2) and plaintiff prevails thereon, for such other relief as the court orders. Judgment shall be entered accordingly as provided in s. 299.24."

ing to the landlord from the premises.[2] The sheriff may contract for the services of a mover or trucker to assist him in the removal,[3] then notifies the evicted tenant of the place where the goods are being stored and delivers any receipt or document necessary for the tenant to regain possession of the goods.[4]

A mover or trucker who assists the sheriff acquires a warehouseman's lien under § 407.209 for the collection of the costs of storage of the goods.[5] He also acquires the right to sell the goods to enforce the lien. Section 407.210 provides:

"407.210 Enforcement of warehouseman's lien. (1) Except as provided in sub. (2), a warehouseman's lien may be enforced by public or private sale of the goods in bloc or in parcels, at any time or place and on any terms which are commercially reasonable, after notifying all persons known to claim an interest in the goods. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the warehouseman is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the warehouseman either sells the goods in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of goods sold, he has sold in a commercially reasonable manner. A sale of more goods than apparently necessary to be offered to insure satisfaction of the obligation is not commercially reasonable except in cases covered by the preceding sentence.

"(2) A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:

"(a) All persons known to claim an interest in the goods must be notified.

---

2. Section 299.45(2)(b), Wis.Stats. (1971):

"Execution of writ of restitution.

   *    *    *    *    *    *

"(2) HOW EXECUTED; DUTIES OF SHERIFF. The sheriff shall execute the writ in the manner following:

   *    *    *    *    *    *

"(b) He shall remove from the premises described in the writ, using such reasonable force as may be necessary, all personal property found therein not the property of the plaintiff."

3. Section 299.45(3)(a), Wis.Stats. (1971):

"Execution of writ of restitution.

   *    *    *    *    *    *

"(3) MANNER OF REMOVAL AND DISPOSITION OF REMOVED GOODS.

"(a) In accomplishing the removal of property from the premises described in the writ, the sheriff is authorized to engage the services of a mover or trucker."

4. Section 299.45(3)(b), Wis.Stats. (1971):

"Execution of writ of restitution.

   *    *    *    *    *    *

"(3) MANNER OF REMOVAL AND DISPOSITION OF REMOVED GOODS.

"(b) Except as provided in par. (c), the property removed from such premises shall be taken to some place of safekeeping within the county selected by the sheriff. Within 3 days of the removal of the goods, the sheriff shall mail a notice to the defendant as specified in sub. (4) stating the place where the goods are kept and shall deliver to the defendant any receipt or other document required to obtain possession of the goods. Warehouse or other similar receipts issued with respect to goods stored by the sheriff under this subsection shall be taken in the name of the defendant. All expenses incurred for storage and other like charges after delivery by the sheriff to a place of safekeeping shall be the responsibility of the defendant, and any person accepting goods from the sheriff for storage under this subsection shall have all of the rights and remedies accorded by law against the defendant personally and against the property stored for the collection of such charges, including the lien of a warehouseman under s. 407.209. Risk of damages to or loss of such property shall be borne by the defendant after delivery by the sheriff to the place of safekeeping."

5. It is not clear to us that § 299.45(3)(b) grants the warehouseman a lien for the expense of moving the property to the place of safekeeping as well as for storage and other charges thereafter. The parties have not argued any distinction, however, and we do not consider that the due process question is any different whether the lien extends to moving charges or not.

"(b) The notification must be delivered in person or sent by registered mail or certified letter to the last known address of any person to be notified.

"(c) The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than 10 days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place.

"(d) The sale must conform to the terms of the notification.

"(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.

"(f) After the expiration of the time given in the notification, an advertisement of the sale must be published as a class 2 notice, under ch. 985, where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account they are being held, and the time and place of the sale. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be posted at least 10 days before the sale in not less than 6 conspicuous places in the neighborhood of the proposed sale.

"(3) Before any sale pursuant to this section any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this chapter.

"(4) The warehouseman may buy at any public sale pursuant to this section.

"(5) A purchaser in good faith of goods sold to enforce a warehouseman's lien takes the goods free of any rights of persons against whom the lien was valid, despite noncompliance by the warehouseman with the requirements of this section.

"(6) The warehouseman may satisfy his lien from the proceeds of any sale pursuant to this section but must hold the balance, if any, for delivery on demand to any person to whom he would have been bound to deliver the goods.

"(7) The rights provided by this section shall be in addition to all other rights allowed by law to a creditor against his debtor.

"(8) Where a lien is on goods stored by a merchant in the course of his business the lien may be enforced in accordance with either sub. (1) or (2).

"(9) The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of wilful violation is liable for conversion."

In order for the plaintiffs to successfully maintain this action under 42 U.S.C. § 1983, they must establish that the defendants were acting under color of state law and that through their action the plaintiffs were deprived of their constitutional rights. The plaintiffs have satisfied their burden.

It is beyond dispute that the defendant sheriffs are acting under color of state law in executing the writ of restitution. The county is an instrumentality of the State of Wisconsin and acts as the agent of the state in carrying out the state's functions. § 59.01, Wis.Stats. (1971); *State v. Mutter*, 23 Wis.2d 407, 127 N.W.2d 15 (1964). The defendant sheriffs are officers of their respective counties, § 59.12, Wis.Stats., and act as instrumentalities of the state in enforcing writs of restitution. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). It is also beyond dispute that the defendant movers acquire their liens when they remove the named plaintiff's goods at the direction of the defendant sheriffs.[6] This concert of action between the defendants casts the defendant movers in the role of agents of the sheriffs and brings their actions "under color of" state law. See *Brooks v. Flagg Bros., Inc.*, 553 F.2d 764 (2nd Cir. 1977).

---

6. See footnote 4, supra.

In *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966), the Supreme Court ruled that "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute." [7]

The Seventh Circuit established a test for determining if a private individual was jointly engaged with a state official in *Lucas v. Wisconsin Electric Power Co.*, 466 F.2d 638, 654–656 (7th Cir. 1972), when it said:

> "The 'under color of' provision encompasses only such private conduct as is supported by state action. That support may take various forms, but it is quite clear that a private person does not act under color of state law unless he derives some 'aid, comfort, or incentive,' either real or apparent, from the state. Absent such affirmative support, the statute is inapplicable to private conduct.
>
> "We believe that affirmative support must be significant, measured either by its contribution to the effectiveness of defendant's conduct, or perhaps by its defiance of conflicting national policy, to bring the statute into play.   *   *   *"

The defendant movers derive aid from §§ 299.45 and 407.210, Wis.Stats. (1971), in the conduct of its business. Were it not for the statutes, the defendant movers could not enter into the premises, remove the goods, and automatically acquire warehousemen's liens. Such aid must be characterized as significant for it is the sole basis for the defendant movers' liens.

■ The due process requirements of the 14th Amendment apply to personal property. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Thus the issue before the Court is whether due process requires a hearing at which plaintiffs are entitled to challenge the creation of the warehouseman's lien prior to execution of the writ of restitution, and whether it requires a hearing at which the plaintiffs are

afforded the opportunity to challenge the amount of the lien acquired by the defendant movers before the defendant movers can enforce that lien pursuant to § 407.210, Wis.Stats.

The Supreme Court has held that an individual cannot be completely and permanently deprived of his property without a hearing that comports with due process. *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, supra. The effect of these holdings on the plaintiffs' case is best demonstrated by the more recent case of *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

Mitchell attacked the constitutionality of the Louisiana sequestration procedure making a writ of sequestration available to a mortgage or lienholder who has filed an action against the debtor. The purpose of the writ is to prevent the waste or alienation of the encumbered property pending the disposition of the action. The writ may issue on an ex parte application by the creditor provided the creditor submits a verified petition or affidavit setting forth specific facts demonstrating the nature of the claim, the amount thereof, and the grounds for issuance of the writ. The creditor is also required to post a bond. In the parish where the case arose, the writ could issue only after the clear showing required had been made before a judge.

The Louisiana procedure also entitled the debtor to immediately seek dissolution of the writ and/or regain possession by filing a bond to protect the creditor's interest. The debtor is entitled to dissolution unless the creditor can prove the grounds for issuance, the existence of the debt, the lien, and a delinquency. If the creditor fails to make the required showing, the Court can order a return of the property and assess damages, including attorney's fees, in the debtor's favor.

---

7. Although *Price* referred to 18 U.S.C. § 242, the criminal counterpart of 42 U.S.C. § 1983, it is equally applicable to this action. *Monroe v.* *Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1945).

The Supreme Court determined the Louisiana writ of sequestration procedure to be constitutionally adequate for two reasons. First, the debtor is entitled to a hearing on the merits of the creditor's claim before his property can be permanently disposed of. The writ of sequestration is only a temporary disposition of the property pending the outcome of the action filed by the creditor.

Second, the Court held that the procedure "effects a constitutional accommodation of the conflicting interests of the parties." 416 U.S. at 607, 94 S.Ct. at 1900. The creditor has a right to secure payment of the unpaid balance of the purchase price. The security deteriorates in value while in the possession of the debtor merely by being put to its intended use. Because the debtor has ceased making installment payments, the creditor is not compensated for the deteriorating value of his security. As the Court said: "The State of Louisiana was entitled to recognize this reality and to provide somewhat more protection for the seller." 416 U.S. at 608, 94 S.Ct. at 1900.

The procedural safeguards provided the debtor in the accommodation sufficiently protected his rights. The Wisconsin statutes also provide a sufficient protection.

Section 299.45 of the Wisconsin Statutes authorizes the defendant sheriffs to enforce the writ of restitution. The writ issues only after a judicial determination that a landlord is entitled to possession of his premises. The plaintiffs have the opportunity to present their challenges to the landlords' claims at a due process hearing, and § 299.45(3) further provides that upon application of the defendant, the Court may stay the issuance of the writ for a period not to exceed thirty days, conditioned on the defendant's paying all rent or other charges due and unpaid at the entry of judgment. The writ, then, issues in aid of enforcement of a judgment, and due process does not entitle the plaintiffs to a second challenge to the landlords' claims before the defendant sheriffs execute the writ.

The imposition of charges by the mover for its services, as provided in the statute, is implicitly authorized by the same judicial writ, and creation of the lien itself without regard to the amount thereof would appear to be wholly appropriate. See, e. g., *Phillips v. Money*, 503 F.2d 990 (7th Cir. 1974), and *Adams v. Department of Motor Vehicles*, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974), wherein it was held that a garageman lien claimant's retention of the property does not violate due process.

As to enforcement of the lien pursuant to § 407.210, Wis.Stats., in *Phillips v. Money*, supra, the Court held that the Indiana lien law procedure which allowed a garageman to obtain possession of a vehicle and impose on the vehicle's owner the burden of initiating litigation to challenge the garageman's right and to resolve disputes between the parties was not fundamentally unfair in that it accommodated the interests of both parties. In so concluding, the Court said at pages 994–995:

> " * * * [H]ere the voluntary surrender of the motor vehicle to the garageman, albeit for the limited purpose of performing authorized repairs, results in the garageman having both a legal property interest, in the form of a lien, and actual possession. * * * Under these circumstances we cannot conclude that the Indiana procedure, permitting the repairman to retain possession and imposing on the car owner and burden of initiating litigation to challenge his right and resolve the disputes is fundamentally unfair. [Citations omitted.]"

While the named plaintiff in this action did not voluntarily surrender her property, the defendant mover has a legal property interest in the form of a lien resulting from the issuance of the writ of restitution by a court after a full due process hearing, and it has actual possession.

The tenant is given notice prior to execution of the writ that charges for storage will be incurred if he fails to vacate. Indeed, all important phases of the eviction process require notices to the tenant. The legislature and the courts are aware that the tenant is frequently in a disadvantaged economic position. However, the imposition of moving charges can hardly be considered

a surprise to him. An alert tenant can avoid the charges by personally removing his household goods. Only those tenants who fail to avail themselves of such opportunity for self help are faced with the added costs of removal by others. Furthermore, no showing has been made that the procedures available for challenging the reasonableness of other types of lienholders' charges would be unavailable or inadequate here once the goods have been removed.

In view of the prior judicial involvement in the eviction case and the additional protections mentioned above, the absence of a post-removal hearing by the statutory lienclaimant does not constitute a constitutional flaw. See *Mitchell v. W. T. Grant Co.*, supra, 416 U.S. at 611, 94 S.Ct. 1895.

Since the action which resulted in the writ of restitution has recently been before a court, it is arguable that the same court would entertain the tenant's challenge to the amount of the mover's charges. Even if the trial court were unable to hear it, the tenant has at least the same means of access to the courts that other wronged individuals possess. See *Phillips v. Money*, supra. Thus, the reasonableness of the charges can be judicially tested if the tenant is aggrieved.

For the foregoing reasons,

IT IS ORDERED that the motion of the defendant Eagle Movers, Inc., to dismiss the action is denied.

IT IS FURTHER ORDERED that the motion of the plaintiff Constance Wegwart to maintain her action as a class action is granted.

IT IS FURTHER ORDERED that the motion of the plaintiff Constance Wegwart for summary judgment is denied, and the motion of the defendant Eagle Movers, Inc., for summary judgment is granted.